Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

1:20-cv-01084

| | |
|---|---|
| Herbie Hamilton, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Orgain, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Orgain, Inc. ("defendant") manufactures, distributes, markets, labels and sells almondmilk beverages purporting to be flavored only with vanilla under the Orgain brand ("Products") .

2.  The Products are available to consumers from retail and online stores of third-parties and defendant's website and are sold in cartons of 32 OZ (946 ML).

3.  The relevant front label statements include "Orgain," "Almondmilk," "10X The Protein!," "Organic Protein," "10g Protein," "Unsweetened" and "Vanilla."

1




4.    The representations are misleading because though the characterizing flavor is represented as vanilla, the vanilla taste and flavor is not provided exclusively by vanilla beans.

I.   Increase in Consumption of Non-Dairy, Plant-Based Milk Alternatives

5.    Over the past ten years, the number of dairy milk substitutes has proliferated to include "milks" (milk-like beverages) made from various agricultural commodities.

6.    Reasons for consuming non-dairy milks include avoidance of animal products due to health, environmental or ethical reasons, dietary goals or food allergies.[1]

7.    Two of the most popular milk alternatives are made from soybeans and almonds.

8.    Reasons for consumers choosing soymilk instead of almondmilk include tree nut

---

[1] Margaret J. Schuster, et al. "Comparison of the Nutrient Content of Cow's Milk and Nondairy Milk Alternatives: What's the Difference?," *Nutrition Today* 53.4 (2018): 153-159.

allergies, creamier consistency, greater amount of soy protein and more B vitamins, magnesium and potassium.[2]

9.     Reasons for consumers choosing almondmilk instead of soymilk include soy allergies, sweeter taste, similar consistency to skim and low-fat milk, nutty flavor and higher levels of vitamin E.

10.    Recent studies indicate that of the 7.2 million U.S. adults with food allergies, 3 million are allergic to tree nuts while 1.5 million are allergic to soy.[3]

11.    Whether due to few people being allergic to soy and tree nuts (almonds) or the different qualities of each product type, consumers have preferences for one over the other and seldom switch between their "plant milk" of choice.

12.    These plant-based beverages are typically mixed with a flavoring like vanilla or chocolate to increase its palatability and available in sweetened and unsweetened varieties.

13.    Defendant's Products are unique by having significantly more protein than similar almondmilk products.

II.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

14.    The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[4]

15.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or

---

[2]   Yahoo Food, Almond Milk Vs. Soy Milk: Which Is Better?, September 5, 2014.
[3]   Ruchi Gupta et al., "Prevalence and severity of food allergies among US adults," JAMA network open 2, no. 1 (2019): e185630-e185630.
[4]   21 C.F.R. §169.3(c).

for its desirable aroma qualities."[5]

16.    Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[6]

17.    It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[7]

18.    This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

19.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[8]

20.    Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.    Food Fraud as Applied to Vanilla

---

[5] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[6] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[7] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[8] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

21.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[9]

22.     The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[10]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[11] |
| | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high quality ingredient with | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use |

---

[9] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.

[10] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.

[11] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

| | |
|---|---|
| alternate ingredient of lower quality | • Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[12] <br><br> • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[13] <br><br> • "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County |
| ➢ Ingredient List Deception[14] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list |

---

[12] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[13] Berenstein, 423.
[14] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

- o "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
- o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described
- o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
- o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
- o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

23.    The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

> the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

> *The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[15]

B.    The Use of Vanillin to Simulate Vanilla

24.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

25.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

---

[15] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

26.   According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[16]

27.   Only 1-2% of vanillin in commercial use is obtained from the vanilla plant, which means almost all vanillin has no connection to the vanilla bean.

28.   Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

29.   Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

30.   This means that if a product is represented as being characterized by vanilla yet contains non-vanilla vanillin, the label and packaging must declare the presence of vanillin and identify it as an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (similar declarations required for Vanilla-vanillin flavoring and Vanilla-vanillin powder).

31.   This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

---

[16] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

C.   Use of "Natural Vanillins" with "Natural Vanilla"

32.   The past ten years have seen many vanillins purporting to be a "natural flavor" – derived from a natural source material which undergoes a natural production process.

33.   However, "natural vanillin" is not a "natural vanilla flavor" because the raw material is ferulic acid or eugenol, from cloves, instead of vanilla beans.

34.   Ferulic acid is converted to vanillin through a natural fermentation process, but this method is cost prohibitive for almost all applications.

35.   Thus, when a product uses "natural vanillin," it is a certainty it is made from eugenol, which was deemed by the FDA to be considered a "natural flavor," due to its manufacturer claiming it is derived by a natural process.

36.   Since this conversion occurs in China with no transparency or verification, regulators and consumers are not told that the production method is a chain of chemical reactions which would more accurately describe an artificial flavor.

III.   Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

37.   The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

38.   The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[17]

39.   Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

---

[17] Amanda Del Buouno, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

40.     These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.   Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

41.     The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

42.     Contrary to promoting "sustainability" of vanilla, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla crops under the pretense of "crop diversification" to the ubiquitous palm oil.

43.     There have also been allegations that Unilever's Rainforest Alliance Certified Program uses child and/or slave labor and is partially responsible for the imprisonment of children.

44.     Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[18]

45.     The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

46.     When less vanilla is available, companies must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

B.   Use of Vanilla WONF Ingredients to Replace and Provide Less Vanilla

47.     The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

_____

[18] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

10

48.     The FDA regulations curiously do not contain the term "vanilla with other natural flavors" and use other flavors when explaining the WONF concept, i.e., strawberry flavor and other natural flavors.

49.     One explanation is because the agency knew that if vanilla could be combined and mixed with "other natural flavors," companies would devise methods to reduce the amount of vanilla and "enhance it" with non-vanilla ingredients.

50.     Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with comments of industry executives.

51.     According to Suzanne Johnson, vice president of research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price."

52.     The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

53.     This high tech alchemy is believed to cause compounded vanilla flavors (less vanilla) to "match[es] the taste of pure vanilla natural extracts (real vanilla)" with "a smaller quantity of vanilla beans."[19]

54.     These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol, heliotropin and piperonal, blended together allowing the use of less vanilla to achieve the intended taste.[20]

---

[19] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

[20] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

C.  Decline of Industry Self-Governance

55.   That high level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

56.   The once powerful and respected trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

57.   FEMA previously opposed industry efforts to deceive consumers, but cast the public to the curb in pursuit of membership dues from its largest members, such as Unilever.

IV.   Designating Vanilla

A.  Requirements for Front Label Designation Where Food Contains Vanilla

58.   There are generally four categories of flavors: natural flavors, natural flavor with other natural flavor ("WONF"), artificial flavor and natural and artificial ("N & A") flavor.

59.   "Natural flavor" refers to "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material and can refer to combinations of natural flavors. *See* 21 C.F.R. § 101.22(a)(3).

60.   Natural WONF flavor contains some flavor "from the product whose flavor is simulated and other natural flavor which simulates, resembles or reinforces the characterizing flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) ("the food shall be labeled in accordance with the introductory text and paragraph (i)(1)(i) of this section and the name of the food shall be immediately followed by the words "with other natural flavor"").

61.   "Artificial flavor" is any substance whose function is to impart flavor that is not derived from a natural source.  *See* 21 C.F.R. § 101.22(a)(1).

62.   Representations as to a food's characterizing flavor requires consideration of (1) the

presence of "natural flavor" and/or "artificial flavor," (2) whether the natural and artificial flavor simulates, resembles or reinforces the characterizing flavor, (3) whether the natural flavor is obtained from the food ingredient represented as the characterizing flavor – i.e., does the peach flavor come from real peaches or is it synthesized from apricots? and (4) the relative amounts of the different flavor types.  See 21 C.F.R. § 101.22(i)(1)(i)-(iii), 21 C.F.R. § 101.22(i)(2).

63.    A product labeled "Vanilla  Almondmilk" gives the impression that all the flavor (taste sensation and ingredient imparting same) is contributed by the characterizing food ingredient of vanilla beans and no non-vanilla flavors extend, reinforce, simulate or enhance vanilla. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

64.    The absence of the term "flavored" from a food labeled "Vanilla Almondmilk" gives consumers the impression the food contains a sufficient amount of vanilla to characterize the food.

65.    If a product contains an "amount of characterizing ingredient [vanilla] insufficient to independently characterize the food," it would be required to be labeled as "Vanilla flavored almondmilk" or "natural vanilla flavored almondmilk." *See* 21 C.F.R. § 101.22(i)(1)(i).

66.    If the amount of the characterizing flavor is sufficient to independently characterize the food, it would be labeled "[Name of Characterizing Flavor] With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing a food containing "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

67.    If the amount of the characterizing flavor is insufficient to independently characterize the food, it would be labeled "[Name of Characterizing Flavor] Flavored With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section," 21

C.F.R. § 101.22(i)(1)(i).

B. <u>Listing Flavors on the Ingredient List</u>

68.    If an exclusively vanilla ingredient is used without having been mixed or blended with non-vanilla flavors, it is designated on the ingredient list by its common or usual name provided by its standard of identity. *See* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'."); *see also* 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'").

69.    Though labeling and use of vanilla with other natural flavor is subject to debate, these "other natural flavors" extend, resemble and simulate vanilla.

70.    On an ingredient list, a WONF flavor is required to be labeled "natural flavor." *See* 21 C.F.R. § 101.22(h)(1) ("Spice, natural flavor, and artificial flavor may be declared as 'spice', 'natural flavor', or 'artificial flavor', or any combination thereof, as the case may be.").

71.    If a product is labeled with an unqualified "Vanilla" and the ingredient list contains (1) a single flavoring ingredient of "Natural Flavor" or (2) an exclusively vanilla ingredient, i.e. vanilla extract, vanilla flavoring <u>and</u> the term "Natural Flavor," the representations of the product are misleading.

V.    Vanilla Flavoring Combinations

72.    There are several types of vanilla flavor combinations used in products labeled "vanilla."

73.    These combinations all contain some vanilla and adjuvants and enhancers.

74.    The first type is a Vanilla WONF.

75.    One version of Vanilla WONF will contain non-vanilla flavor ingredients.

76.    Another version of Vanilla WONF will contain "natural vanillin."

14

77.   The second type will be a flavor combination with an ingredient list disclosing "vanilla extract" or "vanilla flavor" and "natural flavor."

A.   <u>Vanilla WONF</u>

78.   If a product contains a vanilla WONF, it is misleading for the front label to not disclose "with other natural flavor."

79.   A product labeled only as "vanilla" but flavored with vanilla WONF is misleading due to not disclosing the presence of the "other natural flavors" because these flavors "simulate[s], resemble[s] or reinforce[s] the characterizing flavor" of vanilla. *See* 21 C.F.R. § 101.22(i)(1)(iii).

80.   If the food contains a sufficient amount of vanilla to independently characterize the food, it would be labeled "Vanilla 'With Other Natural Flavor.'" *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing a food containing "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

81.   If the food contains an insufficient amount of vanilla to independently characterize the food, it would be labeled "Vanilla 'Flavored With Other Natural Flavor.'" *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section," 21 C.F.R. § 101.22(i)(1)(i).

82.   Vanilla WONF is required to be identified on ingredient lists as "natural flavor," but is sometimes incorrectly and deceptively listed as "Vanilla Flavor With Other Natural Flavor."

83.   The listing of only "Natural Flavor" in a food labeled as "Vanilla" is misleading because "Natural Flavor" refers to a combination of ingredients which may contain vanilla, but also contains non-vanilla flavors.

B.   <u>Vanilla WONF with Vanillin</u>

84.   If a vanilla WONF contains added vanillin, it cannot considered a "natural flavor"

15

because vanillin has always been "artificial" when compared with real vanilla. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

## C. Vanilla with "Non-Characterizing" Flavors

85.    A well-known effort at circumventing the law to deceive consumers about the amount of vanilla was the development of the *Vanguard* "flavoring system" in the late 1970s by David Michael & Co., Inc., currently part of International Flavors & Fragrances ("IFF").

86.    Vanguard was self-described as a "flavorless" "natural flavor enhancer" that "contain[ed] no vanilla, vanillin, ethyl vanillin, or any artificial flavor" but reduced the amount of real vanilla by up to half.

87.    This "non-characterizing" flavor was a "blend[s] of dozens of plant extractives, roots, and botanicals, all natural ingredients found on the GRAS list."

88.    David Michael advised customers that (1) the ingredient list of a product made with *Vanguard* would state "vanilla extract [or flavor], natural flavor" and (2) the front label would only state "Vanilla" because the non-vanilla natural flavor was claimed to not resemble or simulate vanilla.

### i.    Use of "Non-Characterizing" Natural Flavors in Vanilla is Deceptive and Misleading

89.    Where a product's front label states "vanilla" and its ingredient list separately declares "vanilla flavor" or "vanilla extract" and "natural flavor," it is prima facie evidence of the use of a purported non-characterizing flavor in addition to an exclusively vanilla ingredient.

90.    However, even if an added flavor does not simulate or is chemically identical to the

16

characterizing flavor, it still may resemble, reinforce or extend the characterizing flavor.

91.    In products with a characterizing flavor of vanilla, the use of non-vanilla like flavors with vanilla extract and/or vanilla flavoring effects the amount of vanilla used.

92.    These non-vanilla components include GRAS additives like piperonal, maltol and heliotropin, which potentiate, enhance and extend vanilla.

93.    The marketing materials for these flavor systems describe them as "vanilla replacers" – which allow for a food to have use less vanilla yet have the same or greater vanilla taste.

94.    It is implausible to suggest that a "non-characterizing" "natural flavor" can enable the same level of vanilla taste through use of less real vanilla, yet have no relationship with vanilla.

95.    To accept the argument that a product labeled only as "vanilla" can have non-characterizing, non-vanilla flavors which are not disclosed on a front label makes little sense, because it is illogical to add completely different flavors, i.e., strawberry, to a vanilla product.

96.    In other words, there must be some relation of the non-characterizing non-vanilla flavor to the vanilla flavor.

97.    Such a flavor by definition extends the characterizing flavor through making less of it provide a larger sensory effect.

98.    This means that a "Natural Flavor" claimed to be "non-characterizing" would need to be accounted for on the front label of such a food.

ii.    <u>Alternative Explanation Describing Non-Vanilla "Natural Flavor" as a "Masking Flavor" is also Deceptive</u>

99.    A non-vanilla natural flavor in a product labeled only as vanilla may be deceptively described (1) as a "masking flavor" which blocks or limits a negative taste sensation caused by other ingredients or (2) as "rounding out" harsher notes and ancillary flavors.

100.  Masking flavors are claimed to work "in the background with the characterizing notes, elevating them to their true potential" and "subdu[ing] off flavors from other ingredients…allowing the characterizing flavor to shine."[21]

101.  In a standard "vanilla almondmilk" product, a non-vanilla "masking" flavor would not perform any necessary function other than creating the impression the food contains more vanilla, requiring disclosure on the front label. *See* 21 C.F.R. § 101.22(i)(1)(iii) ("other natural flavor which simulates, resembles or reinforces the characterizing flavor").

102.  However, in defendant's high protein Products, a masking flavor is justified due to the use of pea protein, which according to Ryan Loy, Ph.D., at Chromocell Corp., North Brunswick, New Jersey, is described by consumers as "grassy, beany, earthy, bitter and chalky."[22]

103.  Paulette Lanzoff, technical director at Synergy Flavors, Wauconda, Illinois, noted that to formulate a vanilla plant-based beverage with pea protein, it is necessary "to modify flavors to get them just right for the end application."[23]

iii.  A Flavor System Which Contains "Vanilla Extract, Natural Flavor" is Misleading because these Ingredients are Designed to Work Together and their Separation is Intended to Deceive

104.  Companies know consumers value and will pay more for a product which contains high value ingredients they are familiar with, such as vanilla extract or vanilla flavoring.

105.  Natural flavor is a technical, non-transparent term which allows its components to be kept hidden.

106.  The ubiquity of "natural flavor" – in almost every food and beverage available – is synonymous with a laboratory-created, mass produced, low value ingredient.

---

[21] Donna Berry, Modifying Flavor in Dairy Foods, April 11, 2018, Food Business News.
[22] Jeff Gelski, Eliminating the pea flavor in pea protein, February 21, 2018, Food Business News.
[23] *Id*.

107.   Even where a food's ingredient list contains "natural flavor," the presence of "vanilla extract" is a net positive when appealing to consumers.

VI.   **Product Contains Non-Vanilla Flavor and Components Which Enhance, Resemble, Simulate and Extend Vanilla**

108.   The Product is required to be labeled consistent with the flavor regulations in 21 C.F.R. §101.22.

109.   The front label statements and/or images of "Vanilla" are understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is provided by an exclusively vanilla ingredient, (4) no other flavors simulate, resemble, reinforce, enhance or extend the flavoring from vanilla such that less real vanilla is needed and (5) vanilla is the exclusive source of flavor.

A.   <u>Ingredient List Declaration of "Natural Flavor" Reveals Flavor is Not Exclusively Vanilla</u>

110.   The unqualified, prominent and conspicuous representation as "Vanilla" is false, deceptive and misleading because the Product contains flavoring other than vanilla, indicated by "Natural Flavors" on the ingredient list.

Ingredient List



**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC PEA PROTEIN, ORGANIC NATURAL FLAVORS, 1% OR LESS OF THE FOLLOWING: TRICALCIUM PHOSPHATE, ORGANIC RICE BRAN EXTRACT, TRIPOTASSIUM CITRATE, GELLAN GUM, SEA SALT, ORGANIC LOCUST BEAN GUM, NATURAL FLAVOR, ERGOCALCIFEROL (VITAMIN D2)

112.   The Product lists "Organic Natural Flavors" and "Natural Flavor."

113.   One of the flavor ingredients is a masking flavor and the other is used to provide a vanilla taste and flavor.

114.   Whether the masking flavor is the "Organic Natural Flavor" or "Natural Flavor," the analysis is identical.

115.   Assuming the "Natural Flavor" is not the masking flavor, this ingredient contains non-vanilla components which simulate, resemble, extend and/or reinforce the characterizing flavor of vanilla, yet this is not disclosed on the front label.

116.   The Product's front label flavor designation of "Vanilla" fails to disclose the presence of these non-vanilla flavorings, i.e., Vanilla Flavored Almondmilk, Vanilla Almondmilk With Other Natural Flavors, etc., which is deceptive to consumers.

VII.    Conclusion

117.   Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

118.   Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

119.   The Product does not contain the amount, type, and proportion of vanilla flavoring ingredients to non-vanilla flavoring ingredients which simulate, resemble, extend, and enhance vanilla, which is expected by consumers based on the front label and required by law.

120.   The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

121.   Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

122.   The Product contains other representations which are misleading and deceptive.

123.   As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.89 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

124.   Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

125.   Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

126.   Upon information and belief, the aggregate amount in controversy is more than

$5,000,000.00, exclusive of interests and costs.

127.  Plaintiff is a citizen of New York.

128.  Defendant is a California corporation with a principal place of business in Irvine, Orange County, California and is a citizen of California.

129.  This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

130.  Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

131.  A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

132.  Plaintiff is a citizen of Bronx, Bronx County, New York.

133.  Defendant Orgain, Inc. is a California corporation with a principal place of business in Irvine, California, Orange County.

134.  During the relevant statutes of limitations, plaintiff purchased the Product within this district and/or State for personal consumption in reliance on the representations.

Class Allegations

135.  The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class where applicable, during the applicable statutes of limitations.

136.  Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

137.  Plaintiff's claims and basis for relief are typical to other members because all were

22

subjected to the same unfair and deceptive representations and actions.

138.   Plaintiff is an adequate representative because his interests do not conflict with other members.

139.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

140.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

141.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

142.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

143.   Plaintiff incorporates by reference all preceding paragraphs.

144.   Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

145.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

146.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

147.   Plaintiff  and class members would not have purchased the Products or paid as much

if the true facts had been known, suffering damages.

Negligent Misrepresentation

148.  Plaintiff incorporates by reference all preceding paragraphs.

149.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through representing they contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

150.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

151.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

152.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

153.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

154.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and<br>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

155.  Plaintiff incorporates by reference all preceding paragraphs.

156.  Defendant manufactures and sells Products that give the impression they contain

24

sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

157.   The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

158.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

159.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

160.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

161.   Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

162.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

163.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

164.   Plaintiff incorporates by references all preceding paragraphs.

165.   Defendant represented the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only

contained flavor from vanilla.

166.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label..

167.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

168.  Plaintiff incorporates by reference all preceding paragraphs.

169.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 7, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-01084
United States District Court
Southern District of New York

Herbie Hamilton, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Orgain, Inc.,

Defendant

# Class Action Complaint

Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 7, 2020

/s/ Spencer Sheehan
Spencer Sheehan
